IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Jeffry Pearson, | ) | Case No. 18-10502 (BLS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| Jeffry Pearson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 22-50000 (BLS) |
| | ) | |
| Bank of New York Mellon, | ) | Adv. Docket Nos. 1, 5 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The matter before the Court is the motion of Bank of New York Mellon ("BNY Mellon") to dismiss the Debtor's Amended Adversary Proceeding Complaint (the "Complaint"). For the reasons stated below, the Complaint will be dismissed with prejudice.

## INTRODUCTION

Jeffrey Pearson refinanced his home in 2007 via a mortgage that was subsequently assigned to BNY Mellon. The record is undisputed that he has not made any payment due on the mortgage since early 2008. Since then, he has continued to live in his house for over fourteen years whilst pursuing litigation against BNY Mellon and its predecessors in the state and federal courts of Delaware.

Mr. Pearson's claims have been rejected by every court – including this Court – to hear them. And yet, by careful pleading and attenuated tactics, he has managed to forestall the

legitimate exercise of BNY Mellon's remedies and has lived free of charge for years in a home he has steadfastly refused to pay for. That ends here.

## BACKGROUND[1]

Mr. Pearson's Amended Complaint alleges that he and his then-wife purchased a home at 806 N. Madison Street in Wilmington, Delaware (the "Property") in 1987.[2] He and his wife divorced in 1990, but the Complaint states that his ex-wife remained a co-owner of the Property.[3]

The Complaint alleges that Plaintiff approached Best Rate Funding in 2007 to refinance the mortgage on the Property.[4] Mr. Pearson further alleges that he advised Best Rate that his wife was still a co-owner of the Property, but that Best Rate approved the refinance loan and accompanying promissory note without her involvement in the transaction anyway.[5] The Complaint admits that Mr. Pearson's ex-wife executed a quitclaim deed effectively transferring any interest she held in the Property to him in 2012, and making him sole owner of the Property.[6]

Plaintiff admits that he ceased making payments on the loan within a year.[7] In foreclosure proceedings in 2016 in the Superior Court of Delaware, Mr. Pearson argued that his ex-wife's failure to participate in the 2007 refinance impaired or precluded BNY Mellon's ability to foreclose on the Property. Specifically, he challenged the legal effect of his ex-wife's granting of the quitclaim deed (which he says was executed without his knowledge). If the quitclaim deed was not valid, he reasoned, the mortgage extends only to his half ownership of the Property

---

[1]      Pursuant to Fed. R. Civ. P. 52 (made applicable here through Fed. R. Bankr. P. 7052), the Court does not make findings of fact for purposes of a decision on a Fed. R. Civ. P. 12 motion. Factual allegations set forth herein are derived from the Plaintiff's Complaint.

[2]      *See* Complaint at ¶ 4.

[3]      *See* Compl. at ¶ 5-6.

[4]      *See* Compl. at ¶ 8.

[5]      *See* Compl. at ¶ 13-14.

[6]      *See* Compl. at ¶ 20. Mr. Pearson alleges that he was unaware of the quitclaim deed and he suggests that it resulted from nefarious conduct by BNY Mellon's predecessor. It is, of course, entirely likely that she executed the quitclaim deed to avoid having her credit wrecked by Mr. Pearson's default on a mortgage secured by a home that still had her name on the title.

[7]      *See* Compl. at ¶ 15.

and BNY Mellon could not foreclose on foreclose on the Property. The Superior Court, after trial, rejected Plaintiff's arguments and ruled that BNY Mellon was indeed entitled to foreclose upon the Property on account of the years-long payment default.[8] A Sheriff's sale of the Property was scheduled for March 2018.

On the eve of the Sheriff's sale, this Chapter 13 case was filed for the admitted purpose of frustrating that sale.[9] In this proceeding, Mr. Pearson first objected to the BNY Mellon claim on the ground that the claim was barred by the statute of limitations. This Court rejected that argument by Opinion and Order dated November 21, 2019.[10]

On December 21, 2020, Mr. Pearson again moved for summary judgment regarding the BNY Mellon claim, this time on the ground that the claim was barred by the equitable doctrine of laches. This Court denied that motion by letter ruling and Order dated April 30, 2021.[11]

That brings us to Mr. Pearson's adversary proceeding. In this matter, he repeats the contentions that were previously considered and rejected by the Delaware Superior Court. Specifically, he asserts his ex-wife's purported partial ownership at the time of the 2007 refinance effectively voids the transaction and means that he does not owe anything to BNY Mellon, and that BNY Mellon lacks any rights against the Property. From this proposition – rejected by the Superior Court in the foreclosure trial in 2017 – Mr. Pearson has spun a complaint reciting several counts for fraud, breach of contract, defamation, and civil conspiracy.

BNY Mellon's Motion seeks dismissal with prejudice of all counts of the Complaint. As a threshold matter, the Motion seeks dismissal on the basis *Rooker-Feldman* doctrine, discussed

---

[8]     *See* Compl. at ¶ 23-24.
[9]     *See* Compl. at ¶ 25.
[10]    Docket No. 85.
[11]    Docket No. 134.

below.[12] Separately, BNY Mellon asserts that each count of the Complaint fails as a matter of law to state a claim upon which relief can be granted.

## JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper in this Court under 28 U.S.C. § 1409. This is a core proceeding, and the Court possesses authority to enter a final order herein under 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O).

## LEGAL STANDARDS

Fed. R. Civ. P. 12(b)(6) (made applicable here through Bankr. R. 7012) governs a motion to dismiss for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[13] When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff."[14]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief require more than labels

---

[12]    BNY Mellon also contends, persuasively, that principles of collateral estoppel and claim preclusion bar Mr. Pearson's suit, on the grounds that he made, or could have made and presented evidence upon, all of these arguments to the Superior Court. *Accord, In re New Century TRS Holdings, Inc.*, 2021 WL 4767924 (Bankr. D.Del. 2021) (refusing to reopen bankruptcy case to permit homeowner to challenge state court mortgage foreclosure judgment).

[13]    *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del 2007).

[14]    *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).

[15]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[16]

The court must also determine whether the factual allegations "are sufficient to show the plaintiff has a 'plausible claim for relief.'"[17] Federal Rule of Civil Procedure 8(a)(2), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008(a), requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[18] The Supreme Court has stated that the purpose of Rule 8 is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[19] The Supreme Court and the Third Circuit have both stated that "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."[20] Thus "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[21]

## DISCUSSION

### a. *Rooker-Feldman* Doctrine

BNY Mellon first argues that this Court lacks jurisdiction to accord relief to Mr. Pearson on account of the *Rooker-Feldman* Doctrine. In a nutshell, BNY Mellon contends that this Court cannot revisit or undo the 2017 final ruling of the Delaware Superior Court that permitted the foreclosure on the Property to proceed.

The *Rooker-Feldman* doctrine derives from a pair of United State Supreme Court decisions that stand for the proposition that federal trial courts cannot serves as appellate courts

---

[16]     *Twombly*, 550 U.S. at 555 (internal citations omitted).
[17]     *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211.
[18]     FED. R. CIV. P. 8(a)(2).
[19]     *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).
[20]     *Id.* at 555 n.3; *Fowler*, 578 F.3d at 211 (citations omitted).
[21]     *Fowler*, 578 F.3d at 210.

for final state court decisions, and cannot therefore reverse or modify final judgments from state

courts. The Third Circuit has provided guidance regarding how and when to apply the doctrine:

> To determine if the *Rooker-Feldman* doctrine applies, we focus on
> the four part test the Third Circuit espoused in *Great Western
> Mining*: "(1) the federal plaintiff lost in state court; (2) the plaintiff
> 'complain[s] of injuries caused by the state court judgments'; (3)
> those judgments were rendered before the federal suit was filed;
> and (4) the plaintiff is inviting the district court to review and
> reject the state judgments." *Great W. Mining & Min. Co.*, 615
> F.3d at 166 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284, 125
> S.Ct. 1517); *Cardillo*, 756 F. App'x at 154.[22]

In the present case, it is undisputed that the Plaintiff fought the foreclosure in the

Delaware Superior Court and lost. That court authorized the foreclosure to proceed and

overruled the arguments Mr. Pearson makes today in this Court. It is likewise undisputed that

the state court judgment was filed before this bankruptcy case,[23] and Mr. Pearson wants nothing

more here than a ruling from the Court that would preclude the exercise of remedies specifically

authorized by the Delaware Superior Court.

In response, Mr. Pearson has described BNY Mellon as "a licentious, deceiving reptile

who's [*sic*] avarice is slaked only by engaging the kind of petulant fraud it has perpetrated

here."[24] Other than calumny, the Plaintiff's only defense is to simply deny that the Superior

Court's decision did not do what it clearly did. That court considered whether the issues

involving Mr. Pearson's ex-wife's partial ownership could prevent BNY Mellon's exercise of its

remedies, and it rejected that argument.

Mr. Pearson seeks another bite at the apple, having lost in the Superior Court. The

*Rooker-Feldman* doctrine precludes that result and requires dismissal of the Complaint.

---

[22]    *Trustees of the General Assembly v. Patterson*, 527 F.Supp.3d 722, 748-49 (E.D. Pa. 2021).

[23]    Indeed, as noted above, Plaintiff has admitted that the bankruptcy petition was filed for the express purpose of frustrating the Sheriff's sale and, by extension, the order of the Delaware Superior Court. *See* Compl. at ¶ 25.

[24]    Debtor's Answer at 1-2.

### b. **Each Count of the Complaint Fails to State a Claim.**

Having ruled that the *Rooker-Feldman* doctrine requires dismissal, judicial inquiry is complete.  However, the Court in its discretion will address the parties' other arguments to ensure that the record is fully developed.  As noted above, Mr. Pearson has articulated five separate counts in the Complaint:  fraud, common law fraud, breach of contract, defamation and civil conspiracy.  The Court will address the counts *seriatim*.

Plaintiff's two fraud counts are based entirely on the allegation that BNY Mellon (or its predecessor) commenced and prosecuted the foreclosure action on the false premise that its mortgage was secured by the entire Property.  Additionally, the Complaint alleges that BNY Mellon is committing a continuing fraud by asserting that it possesses a claim against Mr. Pearson.[25]

Federal Rule of Civil Procedure 9, made applicable to this proceeding by Fed. R. Bankr. P. 7009, imposes heighted pleading requirements for complaints alleging fraud.  Mr. Pearson has not satisfied that stringent standard here:  the Complaint does not allege that BNY Mellon made any misrepresentation to him or his wife regarding the refinance or the quitclaim deed; does not allege that he relied on any representations; and does not allege any harm he may have suffered by the alleged fraud.  Counts I and II fail to state a claim for relief and must be dismissed.

Count III seeks recovery against BNY Mellon for breach of contract.  To make out a claim for breach of contract, a plaintiff must establish (i) a contractual obligation owed to a plaintiff, (ii) that is breached by a defendant, (iii) causing damaging to the plaintiff.[26]

Mr. Pearson alleges that BNY Mellon has "breached the mortgage agreement" by procuring the quitclaim deed, and also by suing him.  This claim fails as a matter of law, and

---

[25]   *See* Compl. at ¶ 43.
[26]   *In re Med. Wind Down Holdings III, Inc.,* 332 B.R. 98, 109 (Bankr. D.Del. 2005).

equally important, is contradicted by the allegations in Mr. Pearson's Complaint. First, the quitclaim deed does not bear upon the parties' respective contractual obligations under the 2007 refinance and cannot support a claim for breach of contract. Second, to the extent that there has been a breach of contract, Mr. Pearson is the breaching party: he admits that he entered into the contract, and he admits at ¶ 15 of the Complaint that he has defaulted upon his payment obligations thereunder. Count III fails.

Count IV attempts to charge BNY Mellon with defaming Mr. Pearson. However, the Complaint only recites that BNY Mellon somehow defamed Mr. Pearson "[B]y its actions in disseminating the false and fraudulent claim that it possessed both a mortgage on the entirety of [the Property] and a $90,000 personal judgment against the Plaintiff."[27]

Under Delaware law, a claim for defamation requires a plaintiff bringing a claim for defamation under Delaware law to plead five elements: (1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury.[28] A defamatory communication is one that tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.[29] Both the defamatory character of the communication and the third party's understanding of the communication must be pled to establish a claim for defamation.[30] The Complaint does not satisfy any of the requisite elements. At most, Mr. Pearson alleges that by suing him to recover on its long-overdue debt, BNY Mellon has somehow defamed him. This Count fails.

---

[27]  *See* Compl. at ¶ 50.
[28]  *Wright v. Pepsi Cola Co.*, 243 F.Supp.2d 117, 124 (D. Del. 2003).
[29]  *Henry v. Delaware Law School of Widener University, Inc.*, 1998 WL 15897, at * 10 (Del.Ch. Jan.12, 1998).
[30]  *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 716 (D. Del. 2008).

Finally, Count V of the Complaint seeks recovery from BNY Mellon for civil conspiracy. A civil conspiracy claim cannot be maintained without an actionable tort or wrongful act. Again, all Mr. Pearson has done to allege this claim is repackage his contention that BNY Mellon failed to obtain a valid lien against the entire Property. As the Court has now rejected each of the other counts relating to the 2007 refinance and the quitclaim deed, Plaintiff has failed to allege a specific wrongful act to sustain this claim. Count V for civil conspiracy fails.

## **CONCLUSION**

For the foregoing reasons, the Court will dismiss the Complaint with prejudice. An appropriate Order will issue.

BY THE COURT:

Dated: January 17, 2023

Brendan Linehan Shannon
United States Bankruptcy Judge